**FILED**
**Mar 10, 2021**
**09:16 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION CLAIMS
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **FRED H. LEIMER,** | ) | |
| **Employee,** | ) | **Docket No. 2020-06-0688** |
| **v.** | ) | |
| | ) | |
| **GLOBAL AG SOLUTIONS ISC/** | ) | **State File No. 40218-2017** |
| **HUTSON, INC.,** | ) | |
| **Employer,** | ) | |
| | ) | **Judge Joshua Davis Baker** |
| **IMCASCO INSURANCE** | ) | |
| **COMPANY,** | ) | |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER

---

The Court held an expedited hearing on February 25, 2021, to consider whether Mr. Leimer would likely prove at a final hearing that he is entitled to back surgery. Hutson does not dispute that Mr. Leimer injured himself falling backward from a tractor in May 2017. Instead, as one expert put it, this claim's "bugaboo" is whether Mr. Leimer needs surgery because of that work injury or due to natural disc degeneration and "non-healing" from a previous, unrelated fusion. Based on the expert medical evidence, the Court holds that he is unlikely to prevail at trial and denies his request.

### Claim History

In 2012, Dr. David McCord performed an L4-5 fusion that went so well that Mr. Leimer said he felt like a new man until he fell from the tractor. Since then, he has suffered from low-back and radiating right-leg pain and occasional numbness.

Mr. Leimer accepted care from Dr. Stephen Kent, whom he chose from a panel. After conservative treatment, Dr. Kent referred Mr. Leimer to Dr. Richard Berkman, a board-certified neurosurgeon, to investigate whether the injury caused sciatic nerve damage.

Dr. Berkman examined Mr. Leimer roughly four months post-injury. He concluded after an MRI and EMG that he did not have nerve damage but did have "wear and tear at the next level up" from his fusion, which is "really common." Dr. Berkman believed that Mr. Leimer initially suffered from sciatica after his injury, but that at the time he examined him, his complaints were due to the degenerative condition of his spine above the level of his previous fusion. In addition, he believed that although the MRI showed a minor disc bulge at L3-4, it was not the source of Mr. Leimer's complaints, since they were inconsistent with that type of injury. When Dr. Berkman could not explain his symptoms, Mr. Leimer returned briefly to Dr. Kent, who released him from care a couple of months later.

Mr. Leimer then received authorized care from Dr. McCord, who had performed his previous fusion. The doctor diagnosed "spinal stenosis, essentially, spondylosis" at the level above the prior fusion and an "incomplete union" from the fusion, also called "pseudoarthrosis." Dr. McCord recommended surgery and was willing to relate Mr. Leimer's condition to his work injury. However, when asked in his deposition whether the MRI taken "two months removed from the work accident" had "acute findings or degenerative findings," Dr. McCord said, "I think they are more degenerative findings." He admitted that Mr. Leimer's condition at the level above his fusion could be due to "just age and time," but as to whether "the injury had a component to it," he thought it "may be an element of both."

Dr. McCord also agreed that pseudoarthrosis results from non-healing rather than an acute injury. However, he made an "important parse" that "a fair number of people" after a fusion surgery might not heal perfectly but would not realize it unless something traumatic "sort of shakes it up[.]" He said that although these conditions preexisted the work injury, "none of us would have known about [the condition] short of the injury. So, it brought it to light." He continued, "That's where I felt like it had some connection." However, his opinion was not certain as to causation. In answer to a question about the manifestation of symptoms from pseudoarthrosis, he responded, "[W]ere you a ticking time bomb and a month later it would have shown up? Or would you have gone another decade and who would have cared? That's the bugaboo of this."

Given Dr. McCord's uncertain opinion, Hutson sought an independent medical evaluation from Dr. Ryan Snowden, an orthopedic spine surgeon, who determined Mr. Leimer's back conditions were unrelated to his work injury. Like Dr. Berkman, he explained the disc bulge and degenerative adjacent segment changes at L3-4 as something "typically found above a previous fusion." Dr. Snowden called the degeneration and pseudoarthrosis, "known complications of previous lumbar surgery." He noted that the sciatic symptoms Mr. Leimer first complained of had resolved and become instead "radiculopathy in the dermatome consistent with his adjacent segment degeneration."

2

Dr. Snowden further explained that pseudoarthrosis was "the fusion, which was undertaken in 2012, just not completely healing." When asked whether the work injury could have caused pseudoarthrosis, Dr. Snowden responded that "non-healing, you know, is not really an acute sort of problem." Similarly, Dr. Berkman, stated it would be "highly unlikely, highly unusual" for pseudoarthrosis to result from an acute injury.

Upon receiving Dr. Snowden's opinion, Hutson denied surgery, which compelled Mr. Leimer to seek care from Dr. Robert Lowe. Dr. Lowe observed "severe stenosis at L3-L4" and also recommended surgery. Mr. Leimer alluded that Dr. Lowe had suggested he simply use private insurance to cover his surgery and emotively described the ethical dilemma presented to him when offered an opportunity to receive treatment but at the cost of committing, in his words, "insurance fraud."

Instead, Mr. Leimer consulted with Dr. James P. Anderson, who performed a records-review. In his affidavit, after referencing the mechanism of injury and the imaging studies, he wrote, "It is my opinion, within a reasonable degree of medical certainty that the patient's current symptoms are more probably than not the result of the aforementioned fall."

### Findings of Fact and Conclusions of Law

To prevail at an expedited hearing, Mr. Leimer must show that he is likely to succeed at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2020); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015).

The threshold issue is whether Mr. Leimer's work injury aggravated his preexisting condition, and if so, whether this aggravation meets the definition of a compensable injury. In Workers' Compensation Law, "an injury . . . shall not include the aggravation of a preexisting disease, condition or ailment unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14). An injured worker "can satisfy the burden of proving a compensable aggravation if: (1) there is expert medical proof that the work accident contributed more than fifty percent (50%) in causing the aggravation, and (2) the work accident was the cause of the aggravation more likely than not considering all causes." *Miller v. Lowe's Home Centers, Inc.*, 2015 TN Wrk. Comp. App. Bd. LEXIS 40, at *13 (Oct. 21, 2015).

Applying these principles, Dr. McCord mentioned repeatedly that causation in this claim is "challenging" and difficult to judge – difficult enough that he sometimes answered indirectly or answered with another question. But two opinions emerged from his testimony: Mr. Leimer's conditions are degenerative and from non-healing rather than from an acute cause, and Dr. McCord thinks these conditions are connected to the work

3

injury because Mr. Leimer was asymptomatic previously. In his words, the work injury brought the pseudoarthrosis to light, and Mr. Leimer's condition "may be an element of both" the work injury and his preexisting condition.

Dr. Anderson was the only other physician to offer a favorable opinion, but that came after a records-review rather than a thorough physical examination and was only offered by affidavit. He believed Mr. Leimer's "current symptoms are more probably than not the result of the aforementioned fall." His opinion did not convey or explain how the aggravation was more than fifty percent caused by the work injury, nor did it address whether the work injury caused the aggravation when considering all causes.

For the defense, both Drs. Berkman and Snowden testified that the condition of Mr. Leimer's spine at the level above his prior fusion is "really common" and "typically found" from the excess wear and tear endured after a fusion. As for pseudoarthrosis, Dr. Berkman said it would be "highly unlikely, highly unusual" for it to have any connection to the fall. Similarly, Dr. Snowden explained pseudoarthrosis is "not really an acute sort of problem."

Both Dr. Berkman's and Dr. Snowden's testimony supported the contention that Mr. Leimer's current symptoms are due to a condition that likely evolved over time. Dr. Berkman recounted that Mr. Leimer's sciatic complaints after the work injury could not be related to his preexisting condition. Additionally, Dr. Snowden believed those sciatic symptoms resolved just as radicular complaints consistent with the preexisting condition developed, confusing the true genesis of those symptoms. When Dr. McCord was confronted with this observation and possible explanation, he called it "really insightful."

Hutson argued that Dr. Berkman's opinion should be presumed correct because he became authorized through a direct referral from Dr. Kent, who was chosen from a panel. However, only the opinion of a treating physician "selected by the employee from the employer's designated panel of physicians pursuant to § 50-6-204(a)(3)" is afforded a rebuttable presumption of correctness. *Gilbert v. United Parcel Serv., Inc.*, 2019 TN Wrk. Comp. App. Bd. LEXIS 20, at *13 (June 7, 2019). So, Dr. Berkman's opinion is not presumed correct here.

In evaluating conflicting expert testimony, a trial court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information through other experts." *Brees v. Escape Day Spa & Salon,* 2015 TN Wrk. Comp. App. Bd. LEXIS 5, at *14 (Mar. 12, 2015).

Here, the experts were well-qualified and examined Mr. Leimer personally, except for Dr. Anderson. Dr. Berkman examined him the closest in time to the injury, and Dr. McCord had the most familiarity with Mr. Leimer's condition and medical history, as he performed the initial fusion. All the experts relied on the same imaging studies to form

4

their opinions. But the Court credits the testimony of Drs. McCord, Berkman, and Snowden above that of Dr. Anderson, as those doctors all underwent cross-examination.

Importantly, much of the experts' testimony did not actually conflict. Dr. McCord associated Mr. Leimer's condition to his work injury. But the most he said was that the work injury "may be an element," kick-started some symptoms, and brought this preexisting condition to light. That the work injury initiated the condition's discovery or instigated symptoms is not equivalent to contributing more than fifty percent in causing an aggravation. Therefore, Mr. Leimer did not satisfy his burden.

It is **ORDERED** as follows:

1. Mr. Leimer's request for medical benefits is denied.

2. This case is set for a status conference on **Monday, April 26, 2021, at 9:00 a.m. (CDT). You must call 615-741-2113 to participate. Failure to call might result in a determination of issues without your further participation.**

**ENTERED March 10, 2021.**

_____
**Joshua Davis Baker, Judge**
**Court of Workers' Compensation Claims**

5

APPENDIX

Exhibits:

1. Medical records from Dr. Lowe
2. Affidavit of Mr. Leimer
3. Dr. David McCord's Deposition
4. Dr. Richard Berkman's Deposition
5. Dr. Ryan Snowden's Deposition
6. Affidavit of Dr. James P. Anderson
7. Complaint against Dr. James Anderson filed in the Chancery Court of Davidson County, Tennessee, Docket No. 20-0535III
8. Press release from the Department of Justice, U.S. Attorney's Office, Middle District of Tennessee, dated January 4, 2021.

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Notice of Objection to Form C-32
5. Employer's pre-trial brief

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on March 10, 2021.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Fred Leimer, Employee | | | X | 2099 Ferrell Rd. Cumberland Furnace, TN 37051 Tractor_doctor@hotmail.com |
| Richard Clark, Lauren Ray Hall; Employer's Attorneys | | | X | rclark@eraclides.com, lrayhall@eraclides.com |

_____
**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

6



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____  ☐ Motion Order filed on _____

☐ Compensation Order filed on_____  ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties
**Appellant(s) (Requesting Party):** _____ ☐ Employer ☐ Employee

Address: _____  Phone: _____

Email: _____

Attorney's Name: _____  BPR#: _____

Attorney's Email: _____  Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*